## THE AMELIA.[1]

### TALBOT *v.* The Ship AMELIA, SEEMAN, Claimant.

#### *Salvage.*

The officers and crew of a ship of war are entitled to salvage, for the recapture of an armed neutral vessel, from a foreign belligerent, by whom she had been manned with a prize crew.

ERROR from the Circuit Court of New York. It appeared on the record, that Captain Talbot, of the frigate Constitution, having recaptured the Amelia, an armed Hamburg vessel, which had been captured by a French national corvette, and ordered to St. Domingo for adjudication, brought her into the port of New York. A libel was, thereupon, filed in the district court, by the recaptor, setting forth the facts, and praying that the vessel and cargo might be condemned as prize ; or that such other decree might be pronounced as the court should deem just and proper.

A claim was filed by H. F. Seeman, for Chapeau Rouge & Co., of Hamburg, the owners, insisting that the property had not been changed by the capture, and praving restitution, with damages and costs. The District Judge, Hobart, decreed one-half of the gross amount of sales of ship and \*35] cargo, \*without deduction (a sale having been made by consent), to be paid to the recaptors, in the proportions directed by the act of

[1] s, c, 1 Cr, 1,

congress for the government of the navy; and the other half, deducting all costs and charges, to be paid to the claimants.

The cause was brought by appeal before the circuit court, WASHINGTON Justice, presiding, who reversed the decree of the district court, so far as it ordered payment of one-half of the gross sales to the recaptors, "considering that, as the nation to which the owners of the said ship and cargo belong, is in amity with the French republic, the ship and cargo could not, consistently with the laws of nations, be condemned by the French, as a lawful prize; and that, therefore, no service was rendered by the Constitution, or by the commander, officers or crew thereof, by the recapture aforesaid;" and affirmed the rest of the decree. On the decree of the circuit court, the present writ of error was instituted; and the following statement of facts made a part of the record by consent:

"The following case is agreed upon by the parties, to be annexed to the writ of error in this cause, viz.: The ship Amelia sailed from Calcutta, in Bengal, in the month of April 1799, loaded with a cargo of the produce and manufacture of that country, consisting of cotton, sugars and dry goods in bales, bound to Hamburg. On the 6th of September, in the same year, the same was captured, whilst in the pursuit of her said voyage, by the French national covette La Diligente, L. I. Dubois, commander, who took out her captain and part of her crew, together with most of her papers, and placed a prize-master and French sailors on board of her, ordering the prize-master to conduct her to St. Domingo, to be judged according to the laws of war. On the 15th of the same month of September, the United States ship of war, the Constitution, commanded by Silas Talbot, Esquire, the libellant, fell in with, and recaptured the Amelia, she being then in full possession of the French, and pursuing her course for St. Domingo, according to the orders received from the captain of the French corvette. At the time of the recapture, the Amelia had eight iron cannon mounted, and eight wooden guns, with which she had left Calcutta, as before stated. From such of the ship's papers as were found on board, and the testimony in the cause, the ship Amelia, and her cargo, appear to have been the property of Chapeau Rouge, a citizen of Hamburg, residing and carrying on commerce in that place. It is conceded, that the republic of France and the city of Hamburg are not in a state of hostility to each other, and that Hamburg is to be considered as neutral between the present belligerent powers. *The Amelia and her cargo, having been sent by captain Talbot to New York, were there libelled in the district court, and such proceedings were thereupon had in that court, and the circuit court for that district, as may appear by the writ of error and return. [*36

ALEXANDER HAMILTON, of counsel for plaintiff in error.
B. LIVINGSTON, of counsel for defendant in error."

The cause was argued, on the 11th, 12th and 13th of August 1800, by *Ingersoll* and *Lewis*, for the plaintiff in error; and by *M. Levy* and *Dallas*, for the defendant in error. The general points of the discussion were these:

1st. Whether the Amelia could be considered, at the time of the recapture, as a French armed vessel, within the meaning of the act of congress, which authorizes the seizure of French armed vessels? (1 U. S. Stat. 572.)

2d. Whether Captain Talbot was authorized to make a recapture, the Amelia belonging to a power, equally in amity with the United States, and with France?

3. Whether on positive statute, or general principles, a salvage was due to the recaptors, for rescuing the Amelia from the French?

On the 18th of August, PATERSON, Justice, stated, that it was the wish of the court to postpone the cause, for further argument, before a fuller bench. It was, accordingly, argued again, at Washington, in August term 1801, by *Ingersoll* and *Bayard* (of Delaware), for the plaintiff in error ; and by *M. Levy, J. T. Mason* (of Maryland) and *Dallas*, for the defendant in error. And MARSHALL, Chief Justice, delivered the judgment of the court, " that the decree of the circuit court was correct, in reversing the decree of the district court, but not correct in decreeing the restoration of the Amelia, without paying salvage. This court, therefore, is of opinion, that the decree, so far as the restoration of the Amelia without salvage is ordered, ought to be reversed : and that the Amelia and her cargo ought to be restored to the claimant, on paying for salvage one-sixth part of the net value, after deducting therefrom the charges which have been incurred."(a)

---

(a) A full report of the arguments, on the first hearing of this cause, was prepared; but they are found so ably incorporated with the arguments on the second hearing, in Mr. Cranch's Reports, that it has been thought unnecessary to publish it in this volume. 1 Cr. 1.